**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| **RUSSELL WAYNE HARBIN,** | ) | |
| | ) | **Case No. 3:26-cv-00101** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Lynda M. Hill** |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Plaintiff Russell Wayne Harbin filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying his disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 13) and supporting memorandum (Docket No. 14), to which Defendant SSA has responded (Docket No. 15) and Plaintiff has replied (Docket No. 16). This action is before the undersigned for all further proceedings pursuant to the consent of the parties in accordance with 28 U.S.C. § 636(c). (Docket No. 9.)

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion (Docket No. 13) is **DENIED**. For the reasons stated herein, the Court **AFFIRMS** the decision of the SSA.

## I. INTRODUCTION

On December 8, 2022, Plaintiff proactively filed an application for DIB and SSI. (Transcript of the Administrative Record (Docket No. 11) at 75).[1] In his application, Plaintiff asserted that, as of the alleged onset date of December 1, 2022, he was disabled and unable to work due to cirrhosis of the liver, encephalopathy, arthritis in the knees, type 2 diabetes, hypertension, depression, and anxiety. (AR 75.) The claims were denied initially on September 25, 2023, and upon reconsideration on March 29, 2024. (AR 83, 141.) On November 13, 2024, Plaintiff appeared with an attorney and testified at a hearing conducted by administrate law judge ("ALJ") Felicia Burkes. (AR 68–73.) On February 18, 2025, Plaintiff again appeared with an attorney to testify at a hearing conducted by ALJ Felicia Burkes. (AR 37-65.) On March 24, 2025, the ALJ denied the claim. (AR 15-32.) On December 3, 2025, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the SSA. (AR 1-3.) Plaintiff then timely commenced this civil action, over which the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. THE ALJ'S FINDINGS

In the March 24, 2025, unfavorable decision, the ALJ included the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2023.

2. The claimant has not engaged in substantial gainful activity since December 1, 2022, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: obesity; anxiety disorder; panic

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

disorder; and alcohol abuse disorder. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except claimant could occasionally climb ladders/ropes/scaffolds; frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; and claimant would be limited to simple tasks with few, if any, work task changes.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 11, 1969 and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2022, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 20–31.)

## III. REVIEW OF THE RECORD

The parties and the ALJ, in combination, have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSIONS AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, he is not disabled. *Id.* Second, if the claimant does not have a severe medically determinable impairment that meets the 12-month durational requirement, he is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, he is presumed disabled. *Id.* Fourth, if the claimant can perform relevant past work based on her RFC, which is an assessment of "the most

you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), he is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. The ALJ's Five-Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved Plaintiff's claim at step three of the five-step process. The ALJ found that Plaintiff met the first two steps: (1) he had not engaged in substantial gainful activity since the alleged onset date, and (2) his impairments of obesity, anxiety disorder, panic disorder and alcohol abuse disorder were severe. (AR 21.)

However, the ALJ determined at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 22.) Between steps three and four, the ALJ determined that Plaintiff had the RFC capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except Plaintiff could

occasionally climb ladders/ropes/scaffolds; frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; and Plaintiff would be limited to simple tasks with few, if any, work task changes. (AR 24.) At step five, the ALJ determined that Plaintiff had no past relevant work and that considering Plaintiff's age, education, work experience, and RFC there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 30.)

Therefore, the ALJ concluded that Plaintiff was not under a disability at any time from December 1, 2022, when Plaintiff proactively filed his application, through March 24, 2025, the date of the decision. (AR 31.)

**C. Plaintiff's Assertion of Error**

Plaintiff requests that this case be remanded back to the SSA for further administrative proceedings, including a *de novo* hearing and a new decision, based on one assertion of error: the ALJ failed to account for Plaintiff's moderate impairment in maintaining concentration, persistence, and pace when formulating the RFC. (Docket No. 14 at 6-11.) Plaintiff argues that, in determining his RFC, the ALJ relied on the testimony of a vocational expert which was based on an inaccurate hypothetical that lacked any accommodation for the moderate limitation in Plaintiff's ability to maintain concentration, persistence, and pace. (*Id.* at 9.) Plaintiff seeks remand under sentence four of 42 U.S.C. § 405(g), which allows a district court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." (Docket No. 14 at 1.)

Plaintiff contends that the ALJ did not qualify her RFC assessment or identify more specific limitations to account for Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace. (*Id.* at 8.) Plaintiff argues that once the ALJ found that Plaintiff was moderately impaired, the ALJ should have included Plaintiff's mental limitations in the hypothetical she posed

to the vocational expert. (*Id.* at 10.) ("the ALJ's hypothetical question…[was] inaccurate.") Because the ALJ did not include this limitation, the hypothetical to the vocational expert was "inadequate…leaving this Court without any indication of how many jobs identified by the vocational expert would be excluded" if Plaintiff's limitation were added to the hypothetical. (*Id.*) The ALJ's resulting RFC was therefore, according to Plaintiff, "inaccurate, not reflective of the medical record, and thus unsupported by substantial evidence." (*Id.*).

Courts review an ALJ's RFC determination for substantial evidence. *See Blakley*, 581 F.3d at 405–06. "In formulating a residual functional capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). An ALJ "need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).

When evaluating medical opinion evidence, the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," but is instead directed to consider the "persuasiveness" of the medical opinions based on five categories, which include: (1) supportability, (2) consistency, (3) the provider's relationship with the claimant, (4) the provider's specialization, and (5) other factors such as familiarity with the disability program's policies. 20 C.F.R. § 404.1520c(a)-(c).

The first and second factors, supportability and consistency, are the "most important" in a "persuasiveness" analysis. *Id.* § 404.1520c(a). In assessing supportability, medical opinions and prior findings are "more persuasive" if the objective medical evidence and supporting explanations

that are used to support those opinions or findings are "more relevant." *Id.* § 404.1520c(c)(1). In assessing consistency, medical opinions and prior findings are "more persuasive" if they are "more consistent" with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2). These two factors have been described as follows:

> "In other words, supportability addresses whether a medical professional has sufficient justification for their own conclusions. . . . Consistency, by contrast, requires the ALJ to compare the medical opinion at issue to "other medical and nonmedical sources."

*Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-02313, 2023 WL 5924414, at *4 (S.D. Ohio September 12, 2023) (citations omitted).

These two most important factors – supportability and consistency – must be explained, while the other three factors may be explained. 20 C.F.R. § 404.1520c(b)(2). To determine the persuasiveness of a particular medical opinion, a court must evaluate whether the ALJ properly considered the factors set forth in the regulations. *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec*., No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

The applicable SSA regulations "require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). The ALJ must provide a "minimum level of articulation" in his determinations and decisions to "provide sufficient rationale for a reviewing adjudicator or court." *Warren I v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). A failure to meet these "minimum levels" of articulation "frustrates" the court's ability to determine if the ALJ's decision was supported by substantial evidence. *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906

(quoting *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021)).

The Court finds that the RFC formulated by the ALJ is supported by substantial evidence. In over 5 pages, the ALJ thoroughly considered the entire record to reach the conclusion that Plaintiff has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except Plaintiff could occasionally climb ladders/ropes/scaffolds; frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; and Plaintiff would be limited to simple tasks with few, if any, work task changes. (AR 24-30.) The evidence that the ALJ considered included Plaintiff's testimony at the ALJ hearing, the findings of a psychological consultative examination with Deborah E. Doineau, the opinions of two state agency medical consultants, Plaintiff's primary care notes, Plaintiff's medical records from Tristar Skyline Medical Center, and notes from emergency room visits. (*Id.*)

Regarding Plaintiff's mental health, the ALJ relied on Plaintiff's hearing testimony to establish that Plaintiff did household chores, was able to drive, had no paranoia or anger issues, handled stress okay, had no problems with change in routine or focus/concentration, and no longer drank alcohol. (AR 26.) The ALJ also referenced Plaintiff's generally normal mental status exam findings, i.e., that he was alert, oriented, and had appropriate mood and behavior, normal judgment, and normal cognitive functioning. (*Id.*)

Furthermore, the ALJ extensively referenced Dr. Deborah E. Doineau's findings from an August 10, 2023, psychological consultative examination. Those findings included:

- Plaintiff had a driver's license and indicated he was able to drive;
- Plaintiff's hygiene and grooming were average;
- Plaintiff was appropriately dressed;

- Plaintiff was very polite;
- Plaintiff ambulated without assistance;
- Plaintiff was the sole informant;
- Plaintiff was sometimes tangential in his speech and tended to ramble;
- Plaintiff knew the name of the current and previous president, the colors of the American flag, and the shape of a ball;
- When Plaintiff was asked to perform serial sevens and he stated, "that's very difficult for me to do, I am a little nervous." He then attempted serial threes and produced five correct answers and one incorrect answer;
- Plaintiff could recall three out of three unrelated words immediately and two out of three after five minutes;
- Plaintiff was able to spell the word "world" forwards and backwards correctly;
- When asked to cite a current event, Plaintiff mentioned the Music City Grand Prix that recently took place;
- Plaintiff's affect was within normal range and his mood was described as little nervous, exhausted and "sleep deprived." Plaintiff appeared somewhat anxious;
- Plaintiff's IQ was thought to be in the average range and his insight appeared to be limited;
- There was no evidence of frank psychosis;
- Plaintiff's thought processes did not reveal the presence of a psychotic disorder, he was not delusional, and he was not suicidal or homicidal.

(AR 27.)

The ALJ also considered Dr. Doineau's findings about Plaintiff's daily living activities. Those findings indicated that Plaintiff streamed with Roku on his computer, lives independently and knows how to take care of a house, keeps in touch with colleagues from the state, likes helping take care of his parents, is able to pay bills online, makes his own decisions, suffers from insomnia but has adapted to a lack of sleep even though it has become more difficult lately, and feels that his mind is clear since he quit drinking. (AR 28.)

The ALJ repeated Dr. Doineau's opinion that Plaintiff had a mild to moderate limitation in understanding or remembering; a moderate limitation in sustaining concentration or pace; mild social limitation; moderate adaptability limitation; and that Plaintiff claimant was capable of managing funds as long as the claimant maintained clean and sober existence. (AR 28-29.) The ALJ found Dr. Doineau's opinion generally persuasive as it was supported by and consistent with the evidence as a whole. (AR 29.)

The ALJ also discussed the opinions of two state agency psychological consultants, who found that Plaintiff had a mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. (AR 29.) The ALJ also found that these opinions were generally persuasive and that they were supported by and consistent with the evidence as a whole. (AR 29.) These examinations found that Plaintiff had some difficulty with communication and rambled at times, was tangential but able to answer questions, had normal affect, was "a little nervous," could spell "world" forwards and backwards, could perform basic calculations, and was able to perform basic activities of daily living. (AR 29.)

Plaintiff asserts that the ALJ's RFC "failed to account for" the findings of Dr. Paul, Dr. Warren, and Dr. Doineau's that Plaintiff had a moderate limitation in concentration, persistence,

and pace. (Docket No. 14 at 8.) However, in section 5 of the ALJ's decision, which provides justification for the RFC determination, the ALJ specifically referenced all three opinions and found them all to be generally persuasive. AR 28-29. The ALJ stated that "Dr. Doineau opined that claimant had...a moderate limitation in sustaining concentration or pace." (AR 28.) The ALJ also observed that "two state agency psychological consultations opined that claimant had…moderate limitation in concentrating, persisting, or maintaining pace." (AR 29.) Far from "cherry-picking" the record, the ALJ considered these opinions in the context of the whole record, checking them for both supportability and consistency as the regulations require.

Plaintiff also asserts that the ALJ's hypothetical question posed to the vocational expert during the ALJ hearing was "inadequate regarding moderate limitations in concentration, persistence, and pace, leaving this Court without any indication of how many jobs identified by the vocational expert would be excluded if such limitations were added to the hypothetical question." (Docket No. 14 at 10.) However, as Defendant points out, the fact that the ALJ found Plaintiff had a moderate limitation in concentration, persistence, or pace does not mean that any particular formula of limitation was required. (Docket No. 15 at 4.) As Plaintiff himself acknowledges, the ALJ's description of mental limitations occurred at steps two and three of the disability evaluation process and is not an RFC assessment. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520a; 416.920(a)(4)(iv), 416.920a; Social Security Ruling 96-8p; 1996 WL 374184, *4 (S.S.A.) ("the limitations identified 'paragraph B'…criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). (Docket No. 14 at 7.)

"An ALJ does not necessarily err in finding that a claimant has 'moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation

process, and in not including a 'moderate limitation in concentration, persistence, and pace' in [the] residual functional capacity finding at steps four and five." *Doornbos v. Comm'r of Soc. Sec.*, No. 17-1464, 2017 WL 8948744, at *6 (6th Cir. Dec. 13, 2017) (citing *Pinkard v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014).

Here, the ALJ's RFC determination included a provision that Plaintiff "would be limited to simple tasks with few, if any, work task changes." (AR 24.) Plaintiff relies on the Sixth Circuit case *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) to argue that this limitation does not adequately account for Plaintiff's moderate limitations in concentration, persistence, or pace. (Docket No. 16 at 2.) However, in *Ealy* a medical evaluation established specific limitations for the claimant in that case, including an ability to sustain attention to complete simple repetitive tasks that was limited to "[two-hour] segments over an eight-hour day where speed was not critical." *Ealy*, 594 F.3d at 516. Here, Plaintiff's three separate medical evaluations only state that Plaintiff suffers from a moderate limitation in his ability to concentrate, persist, or maintain pace, with nothing more specific stated. (AR 78, 99, 660.) Sixth Circuit courts have found that moderate limitations in concentration, persistence, or pace were consistent with RFCs that limited claimants to "simple and routine tasks" or "simple to moderately complex tasks that were routine and predictable." *Wood v. Comm'r of Soc. Sec.*, No. 19-1560, 2020 WL 618536, at *2-4 (6th Cir. Jan. 31, 2020); *North v. Colvin*, No. No. 2:14–CV–0052, 2015 WL 1476555, at *3 (S.D. Ohio Mar. 31, 2015). The Court therefore finds that the ALJ's RFC determination, which included a limitation to "simple tasks with few, if any, work task changes," was substantially supported by the record.

Plaintiff also relies on *Reeves v. Berryhill*, No. 2:16-CV-00114, 2018 WL 1547856 (M.D. Tenn. Mar. 5, 2018) to suggest that the ALJ's hypothetical to the vocational expert was not precise enough. (Docket No. 16 at 3). But the problem with the RFC and the vocational expert's

hypothetical in *Reeves* was that they gave the impression that the claimant in that case suffered from no impairment at all. *Reeves* 2018 WL 1547856 at *3 ("the ALJ's hypothetical did not adequately relate Reeves's moderate impairment. In fact, both the [vocational expert]'s response and the Agency's own internal rules indicate that this hypothetical suggested no impairment at all. And because the hypothetical presented to [the vocational expert] did not accurately portray Reeves's mental impairment, the [vocational expert]'s responsive testimony cannot amount to substantial evidence that Reeves had the vocational qualifications to perform the jobs identified by the [vocational expert]"). There is no such issue here because the ALJ's RFC incorporated a limitation ("simple tasks with few, if any, work tasks changes") that corresponded to Plaintiff's moderate limitation in concentration, persistence, and pace. The hypothetical question that the ALJ posed to the vocational expert, which included this limitation, was also appropriate.

Therefore, the Court finds that the ALJ sufficiently articulated the RFC finding, which was based on substantial evidence. The ALJ acted within the permitted "zone of choice within which the decisionmakers can go either way, without interference by the courts," *Blakley*, 581 F.3d at 406. For these reasons, the Court rejects Plaintiff's assertion of error.

## V. CONCLUSION

For the above stated reasons, Plaintiff's motion for judgment on the administrative record (Docket No. 13) is **DENIED** and the Social Security Administration's decision is **AFFIRMED**.

An appropriate Order will accompany this memorandum opinion.

LYNDA M. HILL
United States Magistrate Judge